IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ROBERT CALHOON, et al.** | § | |
| | § | |
| **V.** | § | **A-06-CA-185 AWA** |
| | § | |
| **CITY OF AUSTIN, et al.** | § | |

## MEMORANDUM ORDER AND OPINION

Before the Court is Defendants' Motion for Summary Judgment (Clerk's Doc. No. 80) filed February 9, 2007; Plaintiffs' Response (Clerk's Doc. No. 82) filed February 13, 2007; Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Clerk's Doc. No. 83) filed February 20, 2007; Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment evidence (Clerk's Doc. No. 84) filed February 20, 2007; Plaintiffs' Motion for Partial Summary Judgment (Clerk's Doc. No. 81) filed February 10, 2007; and Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment (Clerk's Doc. No. 85) filed February 20, 2007. Having considered the motions, responses, replies, the pleadings, and the entire case file, the Court enters the following Order.

**I. Background**

This case arises out of a dispute between Jerome Black and Tim Kincella, focused on whether Kincella was entitled to possession of property he claimed to be his after he was fired by Black. Black, his wife Gitl, and Robert Calhoon ("Plaintiffs") were the owners and operators of Hardcore Custom Cycles, a motorcycle shop in Austin. On March 17, 2005, after a dispute between Kincella and Black arose, Kincella was fired and ordered out of the shop. He demanded that he be permitted to remove his tools, parts, and other equipment, and when the Plaintiffs refused to permit that, he called Austin Police for assistance. An APD officer responded, and a discussion ensued

between the officer, Jerome Black, and an attorney for the business. These events repeated themselves on March 18, 2005. Eventually, Detective Joyce Casey of the APD was assigned to the case, and after an investigation she warned the Plaintiffs that if they did not permit Kincella to retrieve his property they would be guilty of theft, and, given the value of the property, it would be a felony matter.

Based at least in part on the concerns raised by Det. Casey, on April 4, 2005, Jerome Black filed suit against Kincella to address the ownership of the property. On the date of the filing of suit, Black's counsel obtained an *ex parte* temporary restraining order enjoining Kincella from removing certain property from Hardcore, and basically maintaining the status quo until a temporary injunction hearing could take place. The TRO set the injunction hearing for April 18, 2005. On April 5, 2005, the parties met at Hardcore, and, under the supervision of APD officers, some of the disputed property was returned to Kincella. On April 18, 2005, Det. Casey presented affidavits and arrest warrants for the Blacks and Calhoon to a municipal judge, and the judge authorized the issuance of warrants for the Plaintiffs' arrest on felony theft charges. The warrants were executed that same day at approximately 1:30 p.m., while the Plaintiffs were appearing for the injunction hearing.

In this suit, Plaintiffs allege that, notwithstanding her knowledge that the civil court proceedings were scheduled on April 18, 2005, Det. Casey prepared probable cause affidavits which failed to advise the municipal judge of the civil suit, and intentionally or negligently misled the judge into signing arrest warrants. Plaintiffs allege that Det. Casey obtained the warrants without probable

cause in violation of the Fourth Amendment and then used the warrant to have Plaintiffs improperly arrested. *Id.* at ¶ 7.[1]  All parties now move for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, demonstrate that no genuine issue as to any material fact exists and that judgment is warranted in favor of the moving party as a matter of law. FED. R. CIV. P. 56(c).  A federal court views the evidence in the light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997).  If both parties file motions for summary judgment, the Court views each motion independently. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994).

Once the moving party satisfies his or her burden of demonstrating that no genuine issue of material fact exists, the non-movant must show that evidence in the record indicates that factual issues would be resolved in his or her favor, indicating that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If the evidence suggests that a reasonable jury could return a verdict for the non-moving party, then a genuine issue of material fact exists. *Id.* at 248.  Conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Id.* at 247-48.  The non-movant must establish the existence of the elements essential to his or her case and as to which he or she bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Otherwise, summary judgment in the movant's favor is proper. *Id.*

---

[1]In an Order dated January 11, 2007, this Court dismissed all claims in the case with the exception of Plaintiffs' Fourth Amendment claims against Casey and the City of Austin.

### III.  Motions for Summary Judgment

Defendants move for summary judgment on various bases. First they argue that Plaintiffs cannot show that the actions of Detective Joyce Casey rise to the level of a constitutional violation. Second, they argue that Detective Casey is entitled to qualified immunity. Third, they argue that the City of Austin is entitled to governmental or sovereign immunity for all claims against it. For their part, Plaintiffs move for summary judgment on the issue of liability. Because the case is entirely dependant upon the contents of Det. Casey's three identical affidavits, which are in evidence as Exh. 11 to the Defendants' Motion for Summary Judgment, there are no factual disputes that will prevent summary judgment.[2] Rather, the Defendants' entitlement (or not) to summary judgment turns on questions of law, based on the contents of the affidavits.

**A.    Claims Against Casey**

    **1.    Was There a Constitutional Violation?**

To prevail on a § 1983 claim, a plaintiff must establish the deprivation of rights secured by the Constitution or laws of the United States by a person acting under the color of state law. *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). Plaintiffs argue that Detective Casey violated their Fourth Amendment rights by submitting false probable cause affidavits to Associate Municipal Court Judge Kenneth Vitucci, which caused him to sign the warrants that led to their arrest. Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. Likewise, the intentional or reckless omission of material facts

---

[2]Det. Casey prepared a separate affidavit for each of the three warrants. Other than the name of the defendant, the affidavits are identical.

from a warrant application may amount to a Fourth Amendment violation. *See Hale v. Fish*, 899 F.2d 390, 400 n. 3 (5th Cir.1990).

Plaintiffs have identified three ways in which Casey's affidavit allegedly misled the judge. All three are omissions. In short, Plaintiffs contend the affidavit failed to note that: (1) Plaintiffs had always advised Kincella and Det. Casey they would return the property once ownership issued were sorted out; (2) a meeting was held on April 5, 2005, and some of the property was returned to Kincella in Casey's presence; and (3) the disputed property was the subject of a temporary restraining order; and a civil hearing was set on the date the judge signed the arrest warrants. In response, Defendants assert that the warrant was supported by sufficient probable cause because a theft of Kincella's property had in fact occurred, and the judge's independent finding of probable cause interrupted the chain of causation, absolving Casey of any liability.

**2.     Did the Municipal Judge's Issuance of the Warrant Break the Chain of Causation?**

Fifth Circuit precedent holds that once facts supporting an arrest or indictment are placed before an independent intermediary, such as a magistrate or a grand jury, the intermediary's decision becomes primary, and breaks the chain of causation between the party requesting the arrest or indictment and the charges. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). The causal chain is not broken, however, "if the plaintiff affirmatively shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendants.'" *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir.2004) (citing *Taylor*, 36 F.3d at 456.). Although courts accord great deference to a magistrate's determination of probable cause, they do not "defer to a warrant based on an affidavit that does not 'provide the magistrate

with a substantial basis for determining the existence of probable cause.' " *United States v. Leon*, 468 U.S. 897, 914-15 (1984). Whether the facts set forth in Detective Casey's warrant affidavit provided probable cause for the seizure warrant is a question of law. *See United States v. Runyan*, 290 F.3d 223, 236-37 (5th Cir. 2002).

In this case, Detective Casey's affidavit in support of the arrest warrants details how Tim Kincella's property was being held at Hardcore Custom Cycles where he had been employed as a motorcycle repairman and rebuilder. The five-page single-spaced affidavits are very detailed, and they will be summarized in length, as they are essential to the Court's ruling.

The affidavits state that on March 17, 2005, Jerome Black terminated Kincella from Hardcore Custom Cycles because Black suspected Kincella of stealing from the business. Black refused to allow Kincella to retrieve his motorcycle, tools, or other property from the premises and ordered him off the property. Kincella contacted the APD, claiming that he had been threatened with physical harm if he removed his property. An officer met him at the Hardcore premises, where Kincella waited with a U-Haul. Kincella provided to the reporting officer documentation of ownership, including receipts and titles. The Plaintiffs arrived with their attorney, Michael Parr (Plaintiffs' counsel in this case), who informed the officer that his clients would complete an inventory of the shop and return Kincella's property when the inventory was complete. Kincella expressed concern that his property would be relocated overnight.

The affidavits relate that the next day Kincella returned to the shop, and again called the police in an effort to regain his property. He provided the two responding officers a three page list of thousands of dollars worth of property, with receipts and titles. The officers tried to make contact with Black. Black referred the officers to Parr, who stated that he would review the list and decide

what property if any to return. The officer explained to Black that Kincella should be allowed to retrieve any undisputed property. Parr then stated that Kincella had stolen $1,000.00 from Black by accepting payment from a customer and not turning the money over to the business. Parr stated that, based upon this incident, he had decided not to return any property to Kincella. The officer advised Black that he could be arrested if it was determined that he was intentionally depriving Kincella of his property.

      The affidavits continue to state that on March 22, 2005, Kincella advised Det. Casey that he had sent a certified demand letter to Hardcore but that no property had been returned. Kincella also advised Det. Casey that he had not stolen $1,000 from the business and the receipt in issue had not been paid to him as claimed by Black. Det. Casey spoke to that customer – Mr. Knapp – who stated that he had paid the invoice in the presence of the Blacks and Calhoon on March 19. Knapp reported Black's statement that Kincella could have gotten his property if he had not called the police, and also some veiled threats toward Kincella. Knapp further told the detective that he had known Kincella for three years and knew that Kincella possessed an extensive amount of parts, tools and equipment used to repair motorcycles. Det. Casey reported that on March 24, she spoke with Black on the phone, and Black repeated that Kincella had stolen $1,000.00 and that none of Kincella's property would be returned until it was determined if he had committed other thefts. Det. Casey asked if Black had reported the theft of the $1,000.00 to the police and he said no. Det. Casey then "explained to Black that the law does not give him permission to maintain control of property not belonging to him, [and] . . . that the value of the property that is in question and that he admits possession of and is depriving Mr. Kincella of right to possess is a felony."

In her affidavits, Casey advised that on March 25, she received a fax from Mr. Parr advising her that he is representing Hardcore in a civil dispute against Kincella over personal property. The fax stated that Kincella had demanded property that belonged to the business and to other customers. Parr claimed that three other individuals claimed ownership of Kincella's motorcycle and Parr had attached affidavits claiming they proved the ownership of the other property in issue. Det. Casey explained how the affidavits were unsigned and not notarized, and that she independently followed up on these affidavits. From her investigation, she concluded that two of the affidavits proved to be false, and the other two inconclusive as one individual hung up on her and the other individual was out of the country.

Casey advised that she spoke to Parr and Black on several occasions during the week of March 28. She states that Black advised her on one occasion that he had purchased the property in issue from Kincella for $5,000.00 in January of 2005. Black stated that he paid cash. When Casey asked about a record of the withdrawal, Black stated that he had obtained a cash loan from Steven Ragan. Black stated he did not receive a receipt for the equipment purchase and did not ask for one. Casey advised him she had another receipt when Kincella had sold Black equipment in 2004. Also, upon questioning, Ragan could not remember the amount or circumstances surrounding the loan to Black, but stated he would research his bank records. Despite attempts to reach him, Ragan did not subsequently respond to Casey's calls. Detective Casey summarizes as follows:

> Mr. Kincella has provided this affiant with vehicle titles, part titles, receipts, purchase orders, written bills of sale and photos of property that he is the sole owner of and property that Black, Gitl and Calhoon claim is the property of "HCC." "HCC" and its representatives are preventing Mr. Kincella from recovering those items that he brought to 13900 N. IH 35 # K during the months of November and December, 2004 and January 2005. Initially Black claimed that Mr. Kincella's property was being held by "HCC" due to allegations of $1000.00 (one thousand) dollar theft that upon

> investigation was found never to have occurred. Black then states that he and "HCC" purchased the property in question from Mr. Kincella for $5000.00 (five thousand) dollars in January of 2005. However, in a petition and request for temporary restraining order filed by Parr on behalf of "HCC" and Black on the 4th of April, 2005 issued cause #284741 in the County Court at Law # 2 in Austin, Travis County, Texas, states that Black purchased the diagnostic computer, scanalyzers [and] other pieces of equipment from Mr. Kincella prior to Mr. Kincella coming to work for Black and "HCC." The property inventory provided by Mr. Kincella documents $60,000.00 (sixty thousand) plus dollars in missing tools . . . . It is unlikely that Mr. Kincella would sell his livelihood for the amount of $5000.00. . . . Based upon information learned during the course of this investigation it is this affiant's belief that Mr. Kincella is currently being denied access, use and ownership of $60,000.00 plus dollars of property by Black, Gitl, Calhoon and "HCC." Mr. Kincella has been unable to seek gainful employment as a motorcycle mechanic as a result of being deprived of his property.

*See* Ex. 11 to Defendants' Motion for Summary Judgment..

As a preliminary matter, independent of the question of whether there were material omissions from the affidavit which would destroy probable cause, on its face the affidavit appears to contain probable cause for the arrests. A police officer seeking the issuance of a warrant must present an affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge . . . are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). The reasonable person standard depends on the expertise and experience of law enforcement officials. *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999). Probable cause does not need to be facts sufficient to convict a person, although it must contain more than "bare suspicion." *Id.* at 269. Probable cause has been held to mean a "fair probability" that a crime has been committed. *Id.* That fair

probability, in turn, need not reach the fifty percent mark. *Id.* In this case, Detective Casey's affidavits were sufficient to support the three arrest warrants for theft.[3]

While Kincella had provided Casey with documentation in support of his claim of ownership of the property, Plaintiffs provided her with no documentation. Additionally, Black's story regarding why he refused to return the property changed several times. The affidavit demonstrated that Casey had conducted a thorough investigation of the facts underlying Kincella's claims and of his credibility. Thus, probable cause for the arrests existed on the face of the affidavits presented to the magistrate.

### 3. Was the Omitted Information Material?

The real question in this case is whether Det. Casey omitted material information which, if included in the affidavit, would have defeated probable cause. To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts insert the omitted

---

[3] Section 31.03 of the Texas Penal Code states:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

    (1) it is without the owner's effective consent

* * *

(e) Except as provided by Subsection (f), an offense under this section is:

* * *

    (5) a felony of the third degree if the value of the property stolen is $20,000 or more but less than $100,000 . . . .

facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause. *See, e.g., United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). Plaintiffs claim that the following material information was not presented to the magistrate: (1) Plaintiffs had always advised they would return the property after an inventory; (2) that a meeting was held April 5, 2005, and some of the property was returned at this time; (3) that the disputed property was the subject of a temporary restraining order; and (4) that a civil hearing was going to be held on the very same day the judge authorized the warrants. *See* Plaintiffs' Partial Motion for Summary Judgment.

There are several problems with the Plaintiffs' argument, not the least of which is that many of the allegedly omitted facts were not in fact omitted. For example, as noted earlier, the warrant affidavit informed the municipal judge in numerous places that the Plaintiffs stated they would return Kincella's property to him once they completed an inventory. The affidavit relates this statement being made on March 17, March 18, March 22 (to Mr. Knapp), and March 24, 2005. *See* Ex. 11 to Motion for Summary Judgment (Clerk's Doc. No.80) at 3-4. The affidavit also includes facts demonstrating that the Plaintiffs had made no efforts to complete such an inventory even after the passage of several days to a week. *Id.* at 4. Further, the affidavit explicitly states that on March 25, 2005, Det. Casey received a letter from Mr. Parr indicating that a civil dispute existed, *id.* at 5, and that suit had been filed on April 4, 2005, and a temporary restraining order requested, *id.* at 6.

Plaintiffs are correct that the affidavit does not reflect the partial return of property on April 5, 2005, nor does it note that a hearing on the Plaintiffs' request for a temporary injunction was scheduled for April 18, 2005, the date the warrants were obtained by Det. Casey. There is no dispute that Det. Casey was aware of both of these facts, as she was present for the April 5 meeting, and was also clearly aware of the hearing, as she directed Sheriff's Deputies that they could arrest the

11

Plaintiffs at the hearing. Ex. 6 to Plaintiff's Motion for Partial Summary Judgment (Clerk's Doc. No. 81) pp. 34-37. The question is whether these facts, had they been included in the affidavit, would have destroyed the existence of probable cause. *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000).

The Court concludes, that neither of these two items of information were material under this standard. The fact that the Plaintiffs had returned some property to Kincella would not negate the fact that a substantial amount of property remained in the Plaintiffs possession after April 5, 2005, nor that the property returned on April 5, 2005, had been in their possession from the date of the firing, March 17, 2005, until April 5, 2007, despite numerous demands to return it. Likewise, the fact that a hearing had been set for the temporary injunction request does not negate the prior actions of the Plaintiffs. While the Court could envision why an officer might choose out of prudence to await the outcome of the hearing to determine whether to seek a warrant, that does not mean that probable cause was not present. Thus, the omission of the state court hearing date was not material to the issue of probable cause.[4] The affidavit established that the Plaintiffs had doggedly refused to return property to Kincella, despite Kincella's documentation that he was the property's owner, and despite the Plaintiffs' inability to provide any documentation to support their claim of ownership. They had maintained this position over several weeks, and after being warned that their conduct was potentially criminal, and they had provided an ever-changing list of reasons why they were entitled

---

[4] While the courts have sometimes concluded that a criminal conviction is conclusive of an issue in *civil* litigation, the converse is not the case. *E.g., United States v. Podell*, 572 F.2d 31, 35 (9th Cir. 1978); *Tomlinson v. Lefkowitz*, 334 F.2d 262, 263 (5th Cir. 1964), cert. denied, 379 U.S. 962 (1965). *See Breeland v. Security Insurance Co.*, 421 F.2d 918, 922 (5th Cir. 1969) (number of jurisdictions maintaining that a criminal conviction precludes relitigation of same issue in civil suit is ever increasing).

to possession of the property, including what appeared to be a very questionable claim that the property had been purchased by Black. In this setting, there was plainly probable cause to support the issuance of the warrants, even if the two omitted facts had been included in the affidavit. Accordingly, Det. Casey is entitled to summary judgment on the claim that she violated the Plaintiffs' Fourth Amendment rights by having arrest warrants issued against them.

**B.      Claims Against the City of Austin**

Under long-standing caselaw from the Supreme Court and the Fifth Circuit, municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To prevail on a claim for municipal liability under § 1983, a plaintiff must also establish that the municipal policy or custom identified was executed with deliberate indifference to the plaintiff's clearly established constitutional rights. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). For the reasons just identified, the Plaintiffs are unable to demonstrate that a violation of their constitutional rights occurred. There being no underlying constitutional violation, the City of Austin cannot be liable in this case.

## IV. Conclusion

While the Court concludes that no Constitutional violations occurred in this case, that does not mean that the actions of Det. Casey in this case are beyond reproach. Make no mistake about it, the Plaintiffs are not angels, and they brought upon themselves much of what occurred in this case. Nevertheless, Det. Casey is a law enforcement professional with 22 years of experience, and as a result is expected to meet a much higher standard of behavior than that expected of the

Plaintiffs. Police officers are vested with a great deal of power, and how they exercise that power is crucially important. This Court reviews police reports regularly, and notes that the reports prepared by Det. Casey in this case reflect an uncommon level of personal emotional involvement, and are lacking in the detached, impersonal recitation of the facts normally found in such reports. It appears that Det. Casey became annoyed by the Plaintiffs and their counsel, and that annoyance led her to lose objectivity and to have arrest warrants executed at the very time a civil court was wrangling with the competing ownership claims here.

A police officer has a great deal of discretion. How that discretion gets exercised makes the difference between effective policing, and policing that creates more problems than it prevents. The Court respects that the police possess this discretion, and, as concluded above, the Court has found that there was probable cause to support the issuance and execution of the arrest warrants. But officers are trained that just because there is probable cause to permit an arrest does not mean that making the arrest is a good idea. In this case, the police's involvement commenced to mediate a dispute regarding the return of a fired employee's property, and to keep the peace while that property issue was sorted out. Once that dispute ended up in a civil court, the better exercise of discretion would seem to have been to let the civil courts resolve that dispute, particularly once much of the disputed property had been returned. Instead, Det. Casey waited until the date of the civil hearing to have the warrants issued, and executed them at the very time the hearing was taking place. That was a bad decision – something that appears to also be reflected in the district attorney's dismissal of the cases because of "insufficient evidence" and they were a "civil dispute."  *See* Ex. 10 to Plaintiffs' Motion for Partial Summary Judgment (Clerk's Doc. No. 81). The Court is hopeful that Det. Casey's superiors have reviewed this case, and have addressed these issues.

Nevertheless, for the reasons set forth above, Defendants' Motion for Summary Judgment (Clerk's Doc. No. 80) is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment (Clerk's Doc. No. 81) is DENIED. All claims against the Defendants are dismissed with prejudice. A separate judgment consistent with these conclusions will be entered concurrently with this Memorandum Opinion.

SIGNED this 29th day of March, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE